J-A25014-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | |
|---|---|
| POLINA TERTYSHNAYA, INDIVIDUALLY AND ON BEHALF OF ALEXANDER TERTYSHNAYA, HER MINOR SON, | : IN THE SUPERIOR COURT OF<br>: PENNSYLVANIA<br>:<br>: |
| Appellant | :<br>: |
| v. | :<br>:<br>: |
| STANDARD SECURITY LIFE INSURANCE COMPANY OF NEW YORK, HCC SPECIALTY UNDERWRITERS, INC. A/K/A AMERICAN SPECIALTY UNDERWRITERS, INC., HCC INSURANCE HOLDINGS, INC., A/K/A AMERICAN SPECIALTY UNDERWRITERS, INC., AMERICAN SPECIALTY UNDERWRITERS, INC., MICHAEL S. CHAUT, MICHAEL CHAUT & ASSOCIATES, JAY M. GROSSMAN AND PUCKAGENCY, LLC, | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |
| Appellees | : No. 449 EDA 2014 |

Appeal from the Order entered December 16, 2013,
Court of Common Pleas, Philadelphia County,
Civil Division at No. 3803 May Term 2010

BEFORE: DONOHUE, WECHT and PLATT*, JJ.

MEMORANDUM BY DONOHUE, J.:                **FILED NOVEMBER 19, 2014**

Appellant, Polina Tertyshnaya ("Tertyshnaya"), appeals from the order entered on December 16, 2013 by the Court of Common Pleas of Philadelphia County, Civil Division, granting the motion for summary judgment of Appellees, Standard Security Life Insurance Company of New York ("SSLIC"), HCC Specialty Underwriters, Inc. ("HCC"), and American

---

*Retired Senior Judge assigned to the Superior Court.

Specialty Underwriters, Inc. ("ASU") (collectively, the "Insurance Defendants"). After careful review, we affirm.

The relevant facts and procedural history of this case are as follows. SSLIC is a licensed insurance company. Insurance Defendants' Motion for Summary Judgment on All Claims Because All Claims are Barred by the Statute of Limitations, 8/19/13, ¶ 14. ASU, now known as HCC, was the managing and supervising underwriter for SSLIC's insurance policies at all times applicable to this case. *See id.* ¶ 15. In 1999, Dmitri Tertyshny ("Tertyshny") was a professional hockey player in the National Hockey League and a member of the Philadelphia Flyers ("Flyers"). *Id.* ¶ 13. Tertyshny retained Jay Grossman ("Grossman") of The Marquee Group[1] ("TMG") to represent him as his sports agent. *Id.* ¶ 2. Michael Chaut ("Chaut") was the designated broker for Tertyshny for an insurance policy he allegedly purchased in 1999. *Id.* ¶ 4.

On July 23, 1999, Tertyshny was participating in a Flyers summer training camp in British Columbia, Canada. Second Amended Complaint, 11/6/12, ¶ 19. That evening, Tertyshny died in a tragic boating accident, leaving behind his wife, Tertyshnaya, who was four-months pregnant at the time of his death. This litigation stems from the insurance policy allegedly

---

[1] Grossman is no longer part of TMG. He is now the sole member of the Puck Agency, LLC. *See* Insurance Defendants' Motion for Summary Judgment on All Claims Because All Claims are Barred by the Statute of Limitations, 8/19/13, ¶ 2.

purchased by Tertyshny from the Insurance Defendants in 1999. Tertyshnaya believes that Tertyshny purchased a policy with permanent total disability ("PTD") and accidental death and dismemberment ("AD&D") coverage. *See* Tertyshnaya's Brief at 4. Conversely, the Insurance Defendants maintain that Tertyshny purchased a policy with only PTD coverage. *See* Insurance Defendants' Brief at 5. Tertyshnaya contends that fraud perpetrated by the Insurance Defendants prevented her from receiving death benefits and filing suit within the statute of limitations. *See* Tertyshnaya's Brief at 19.

On May 27, 2010, nearly 11 years after Tertyshny's death, Tertyshnaya filed a complaint against the Insurance Defendants raising claims of breach of contract, quantum meruit/unjust enrichment, and bad faith. On December 20, 2010, Tertyshnaya filed an amended complaint, which added claims for violating the Pennsylvania Unfair Trade Practices and Consumer Protection Law, fraudulent misrepresentation, and negligent misrepresentation. On November 6, 2012, the trial court granted Tertyshnaya's motion for leave to amend the complaint again and to join additional defendants. That same day, Tertyshnaya filed a second amended complaint in which she joined Chaut, Michael Chaut & Associates ("MCA"), Grossman, and the Puck Agency, LLC as defendants.

In the Second Amended Complaint, Tertyshnaya alleged the following. In March 1999, Tertyshnaya and Tertyshny sought and purchased a policy of

PTD and AD&D insurance from the Insurance Defendants for $1,000,000 in coverage, for which she signed as the beneficiary. Second Amended Complaint, 11/6/12, ¶¶ 15, 17.

In April 1999, Tertyshnaya and Tertyshny provided Grossman with $3,700, representing their payment for the premium of the alleged PTD and AD&D policy. *Id.* ¶ 18. Tertyshnaya claimed that neither she nor Tertyshny received a copy of the alleged PTD and AD&D policy prior to Tertyshny's death on July 23, 1999. *Id.* ¶ 20. She asserted that on July 28, 1999, shortly following Tertyshny's death, the Insurance Defendants cancelled the alleged PTD and AD&D policy. *Id.* ¶ 22. Tertyshnaya complained that she has not yet received any of the death benefits to which she believed she was entitled. *Id.* ¶ 23.

Tertyshnaya averred that Attorney Jerrold Colton ("Colton") represented her from late 1999 through 2004. *Id.* ¶ 24. Colton investigated whether she was entitled to AD&D benefits resulting from Tertyshny's death. *Id.* Tertyshnaya contends that Grossman told Colton that she and Tertyshny never purchased any insurance policy. *Id.* Tertyshnaya claimed that in 2005, she retained Attorney James McNally ("McNally") and he likewise looked into whether she had any right to AD&D benefits stemming from Tertyshny's death. *See id.*; *see also* Deposition of McNally, 10/17/12, at 20. Tertyshnaya asserted that McNally and his law firm confirmed Grossman's, and subsequently Colton's, belief that she and

Tertyshny never purchased any insurance policy. *See* Second Amended Complaint, 11/6/12, ¶ 24; *see also* Deposition of McNally, 10/17/12, at 38. Nonetheless, Tertyshnaya stated that she persisted in her investigation. Second Amended Complaint, 11/6/12, ¶ 24.

Tertyshnaya claimed that in December 2008, her second husband, Michael Moy ("Moy"), attempted to contact the Insurance Defendants seeking information about Tertyshny's alleged PTD and AD&D insurance policy. *See id.*; *see also* Deposition of Moy, 7/13/12, at 82. Tertyshnaya asserted that SSLIC explained that if Tertyshny had purchased an insurance policy, that TMG would have held it, that TMG would have issued the certificate of insurance for the policy, and that TMG is an insurance agent for ASU. Second Amended Complaint, 11/6/12, ¶ 24. Tertyshnaya also contended that SSLIC confirmed that AD&D coverage would be part of a PTD insurance policy. *Id.* ¶ 24. Tertyshnaya alleged that Grossman, TMG, Chaut, and MCA are agents for the Insurance Defendants. *Id.* ¶ 26. Tertyshnaya bases this contention on her assertion that Grossman, TMG, Chaut, and MCA solicit and process insurance applications for the Insurance Defendants. *Id.* ¶¶ 25-26.

Tertyshnaya averred that the Insurance Defendants, along with Grossman, TMG, Chaut, and MCA, intentionally concealed Tertyshny's alleged PTD and AD&D insurance policy from her by representing that she and Tertyshny never purchased any insurance policy in an attempt to avoid

paying her death benefits. *Id.* ¶ 32. Tertyshnaya complained that the Insurance Defendants, after the initiation of this litigation, provided her with a copy of Tertyshny's insurance policy, which revealed that on August 30, 1999, after his death, the Insurance Defendants issued the policy, backdated to March 1, 1999, for PTD coverage only. *Id.* ¶¶ 28-29, 33-35, Exhibit A. Tertyshnaya claimed that this fraud, perpetrated by the Insurance Defendants and their agents, prevented her from filing suit until 2010. *See id.* ¶ 32.

On December 7, 2012, the Insurance Defendants filed an answer with new matter in which they denied all material allegations in the second amended complaint. On August 19, 2013, following the completion of discovery, the Insurance Defendants filed a motion for summary judgment, in which they averred the following.

On February 19, 1999, Grossman contacted ASU requesting a quote for PTD insurance for Tertyshny. Insurance Defendants' Motion for Summary Judgment on All Claims Because All Claims are Barred by the Statute of Limitations, 8/19/13, ¶ 16. On March 1, 1999, Grossman obtained confirmation from ASU that Tertyshny was bound to a one-year, 24-hour coverage PTD policy for $1,000,000 with a premium of $3,700. *Id.* ¶ 17. On March 3, 1999, ASU invoiced Grossman for the $3,700 premium. *Id.* ¶ 18. On March 18, 1999, TMG sent Tertyshny material about PTD insurance and directed him to sign the application and make out a check for

the premium and mail it to them. *Id.* ¶¶ 19-20. The Insurance Defendants claim that there were no instructions for Tertyshnaya to sign anything. *Id.* ¶ 19. Around April 26, 1999, Tertyshny sent TMG a signed application along with a $3,700 check from his and Tertyshnaya's joint account for the premium. *Id.* ¶¶ 23-25. On June 4, 1999, ASU received a $3,700 check from TMG representing the payment for the premium due in connection with Tertyshny's PTD insurance policy. *Id.* ¶ 26.

Shortly following Tertyshny's death on July 23, 1999, the Insurance Defendants cancelled his PTD insurance policy. *Id.* ¶ 38. On August 30, 1999, the Insurance Defendants sent a $2,775 refund for the premium to Grossman and TMG along with a copy of Tertyshny's PTD policy with all addendums, including the cancellation addendum. *Id.* ¶ 39.

The Insurance Defendants contended that although Tertyshnaya has believed since 1999 that she is entitled to AD&D benefits, she has not filed with the Insurance Defendants a claim for death benefits. *Id.* ¶ 42. The Insurance Defendants pointed out that neither Colton nor McNally ever contacted the Insurance Defendants, despite evidence that both possessed documents identifying SSLIC as the insurer of a PTD policy for Tertyshny. *Id.* ¶¶ 48-49; Deposition of McNally, 10/17/12, at 27-29; *see also* Insurance Defendants Motion for Summary Judgment on Counts I, II, III, and VIII, 8/19/13, Exhibit 21 (Letters From McNally to Colton, 3/9/05).

The Insurance Defendants maintained that they had no relationship and were in no way affiliated with Grossman and TMG and that neither Grossman nor TMG received any compensation stemming from Tertyshny's purchase of a PTD insurance policy from them. Insurance Defendants' Motion for Summary Judgment on All Claims Because All Claims are Barred by the Statute of Limitations, 8/19/13, ¶¶ 8-10. Rather, the Insurance Defendants identified Chaut as the designated broker for Tertyshny's acquisition of PTD insurance and point out that he received compensation for Tertyshny's purchase of a PTD policy.[2] *Id.* ¶¶ 11-12. The Insurance Defendants further claimed that no employee of the Insurance Defendants ever told Moy, Tertyshnaya's second husband, that Tertyshny purchased a policy with AD&D benefits. *Id.* ¶ 61.

On October 25, 2013, Tertyshnaya filed her memorandum in opposition to the Insurance Defendants' motion for summary judgment. On December 16, 2013, the trial court granted the Insurance Defendants' motion for summary judgment, finding Tertyshnaya's claims barred by the statute of limitations. On January 14, 2014, Tertyshnaya's timely notice of appeal followed.[3]

On appeal, Tertyshnaya raises the following issues for review:

---

[2] On May 22, 2013, the trial court ultimately dismissed Chaut and MCA from the case.

[3] The trial court did not order a concise statement of errors complained of on appeal pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure in this case.

[1.] In deciding a motion for summary judgment, may the trial court resolve factual disputes against the non-moving party?

[2.] Whether the trial court improperly dismissed the case based on the statute of limitations?

[3.] Whether the trial court erred in holding the statute of limitations began to run against [Tertyshnaya], the beneficiary, and the unborn son of the insured, [Tertyshny],

    a.    upon the death of [Tertyshny] on July 23, 1999[,] despite evidence that [Tertyshnaya] and her attorneys were told by the [Insurance Defendants'] agent, defendant [Grossman], that no policy was ever purchased, and

    b.    no later than August 30, 1999 when the [Insurance Defendants] allegedly sent the policy without the death benefits to [their] agent Grossman who claims he never received it, and

    c.    by imputing alleged knowledge of the [Insurance Defendants'] agent Grossman, who claims he was unaware the policy was ever issued, [sic] to the beneficiary [Tertyshnaya] with whom the agent had no relationship?

[4.] Whether the trial court erred in holding there was no evidence that the [Insurance Defendants] fraudulently concealed the policy from [Tertyshnaya], the beneficiary, or that the discovery rule and the fraudulent concealment doctrine did not toll the statute of limitations?

[5.] Whether the trial court erred or abused its discretion in relying upon documents that (1) were misrepresented by the [Insurance

Defendants] as having been in [Tertyshnaya]'s possession prior to this case, (2) were not properly authenticated, (3) were characterized without basis by [the Insurance Defendants'] counsel in violation of [Pa.R.C.P.] 1035.1 and 1035.2 – which characterizations were disputed by [Tertyshnaya]'s insurance expert's report, and (4) as to which the completeness of such document production by the Insurers is disputed and cannot be resolved by the court?

Tertyshnaya's Brief at 2-4 (footnote omitted).[4]

The standard of review for an order granting a motion for summary judgment is as follows:

A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.

In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non[-]moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

---

[4] We have reordered the issues that Polina raises on appeal for ease of review.

- 10 -

***JP Morgan Chase Bank, N.A. v. Murray***, 63 A.3d 1258, 1261–62 (Pa. Super. 2013) (quoting ***Murphy v. Duquesne Univ. of the Holy Ghost***, 777 A.2d 418, 429 (Pa. 2001)).

We begin by addressing Tertyshnaya's first, second, third (including its sub-issues), and fourth issues together, as these issues collectively raise the question of whether the trial court erred in deciding that Tertyshnaya's claims were time barred by the statute of limitations.[5]  ***See*** Tertyshnaya's Brief at 24-36.  The primary basis for Tertyshnaya's arguments on appeal is that the trial court incorrectly determined that the doctrine of fraudulent concealment and the discovery rule did not apply in this case to toll the statute of limitations.  ***See id.*** at 24.

"Summary judgment is appropriate if a plaintiff's cause of action is barred by the statute of limitations."  ***Gojmerac v. Naughton***, 915 A.2d 1205, 1206 (Pa. Super. 2006).  The Superior Court of Pennsylvania has stated the following regarding the statute of limitations:

> As a matter of general rule, **a party asserting a cause of action is under a duty to use all reasonable diligence to be properly informed of**

---

[5]  In a footnote, Polina also attempts to argue that the statute of limitations has not yet begun to run on the claims of her and Tertyshny's minor son. Polina's Brief at 32 n.13.  We find that Polina has waived this argument on appeal for failure to develop it.  ***See Umbelina v. Adams***, 34 A.3d 151, 161 (Pa. Super. 2011).  In the footnote, Polina merely quotes 42 Pa.C.S.A. § 5533(b)(1)(i), which provides for the tolling of the statute of limitations for the claims of unemancipated minors, and provides no further support or basis for this argument.  ***See*** Polina's Brief at 32 n.13.

> **the facts and circumstances upon which a potential right of recovery is based and to institute suit within the prescribed statutory period**. Thus, the statute of limitations begins to run as soon as the right to institute and maintain a suit arises; lack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations[,] even though a person may not discover his injury until it is too late to take advantage of the appropriate remedy, this is incident to a law arbitrarily making legal remedies contingent on mere lapse of time. Once the prescribed statutory period has expired, the party is barred from bringing suit unless it is established that an exception to the general rule applies which acts to toll the running of the statute.

*Hopkins v. Erie Ins. Co.*, 65 A.3d 452, 460 (Pa. Super. 2013) (emphasis added; internal citations omitted) (quoting *Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (Pa. 1983)).

The exceptions that act to toll the running of a statute of limitations include the doctrine of fraudulent concealment and the discovery rule. *Fine v. Checcio*, 870 A.2d 850, 858 (Pa. 2005). In regards to the doctrine of fraudulent concealment, our Court has stated:

> [T]he doctrine of fraudulent concealment serves to toll the running of the statute of limitations. The doctrine is based on a theory of estoppel, and provides that the defendant may not invoke the statute of limitations, if through fraud or concealment, he causes the plaintiff to relax his vigilance or deviate from his right of inquiry into the facts. The doctrine does not require fraud in the strictest sense encompassing an intent to deceive, but rather, fraud in the broadest sense, which includes an unintentional deception. The plaintiff has the burden of proving fraudulent concealment by

- 12 -

> clear, precise, and convincing evidence. While it is for the court to determine whether an estoppel results from established facts, it is for the jury to say whether the remarks that are alleged to constitute the fraud or concealment were made.

*Id.* at 860 (internal citations omitted). Importantly, "in order for fraudulent concealment to toll the statute of limitations, the defendant must have committed some affirmative independent act of concealment upon which the plaintiff justifiably relied." **Baselice v. Franciscan Friars Assumption BVM Province, Inc.**, 879 A.2d 270, 278 (Pa. Super. 2005) (citation and quotations omitted).

Additionally, this Court has held that "[t]he discovery rule is a 'judicially created device which tolls the running of the applicable statute of limitations until the point where the complaining party knows or reasonably should know that he has been injured and that his injury has been caused by another party's conduct.'" **Coleman v. Wyeth Pharm., Inc.**, 6 A.3d 502, 510 (Pa. Super. 2010) (quoting **Crouse v. Cyclops Indus.**, 745 A.2d 606, 611 (Pa. 2000)).

Tertyshnaya argues that the doctrine of fraudulent concealment applied in this case because of misrepresentations made by Grossman and the Insurance Defendants. Tertyshnaya's Brief at 24-36. Tertyshnaya claims that Grossman was an agent for the Insurance Defendants and that he committed an affirmative independent act of concealment by allegedly informing her and Colton that Tertyshny never purchased any insurance

policy. *Id.* at 26-28, 32. Additionally, Tertyshnaya asserts that the Insurance Defendants committed an affirmative independent act of concealment by issuing an insurance policy for PTD coverage, as opposed to AD&D coverage, on August 30, 1999, after Tertyshny's death, backdated to March 1, 1999. *Id.* at 32. Tertyshnaya argues that her insurance expert's report supports her contention that the Insurance Defendants issued a backdated policy that fraudulently only provided PTD coverage so that they could avoid paying her AD&D benefits. *Id.* at 24.

In regards to Tertyshnaya's fraudulent concealment argument, the trial court found the following:

> [N]one of [Tertyshnaya's] unsupported allegations are sufficient to show that the statute of limitations on [her] claims should have been tolled under the fraudulent concealment doctrine. [The] Insurance Defendants presented evidence that they did not [backdate] [Tertyshny]'s policy as evidenced by a conditional coverage note dated March 5, 1999, before the policy was issued. More importantly, neither [Tertyshnaya] nor her attorney contacted [the] Insurance Defendants until December of 2008 regarding the existence of a policy for [Tertyshny] providing [AD&D] benefits. When [Tertyshnaya] contacted [the] Insurance Defendants in December of 2008 inquiring as to why death benefits were not paid, the statute of limitations had expired for all of [her] claims.
>
> *  *  *
>
> In [s]ummary, [Tertyshnaya] alleges a scenario in which she was actively prohibited from discovering the true state of affairs through [the] Insurance Defendants['] fraud and concealment. Although [the]

- 14 -

> Insurance Defendants did contact Grossman, and stated that the [PTD] policy was cancelled due to death, [Tertyshnaya] has produced no coherent facts indicating that [the] Insurance Defendants affirmatively concealed [an AD&D policy]. Nor has [Tertyshnaya] produced any facts to show that she made any attempt to learn of [an AD&D policy] by August of 2005. There is also no evidence that [the] Insurance Defendants produced a [backdated] policy.

Trial Court Opinion, 12/16/13, at 9-10.

We conclude that the trial court did not err in determining that the statute of limitations had run on all of Tertyshnaya's claims and that the doctrine of fraudulent concealment did not apply in this case to toll the statute of limitations. Despite the fact that Tertyshnaya has consistently maintained, since 1999, the belief that Tertyshny's policy contained AD&D coverage, she failed to use all reasonable diligence to become properly informed of the facts upon which her potential right of recovery is based.

The undisputed material facts in this case establish the following. Tertyshny died on July 23, 1999. Tertyshnaya admits, both in her brief and in her deposition testimony, that she was involved in the purchase of an insurance policy for Tertyshny and always maintained the belief that she was entitled to AD&D benefits under Tertyshny's insurance policy. Tertyshnaya's Brief at 17; Deposition of Tertyshnaya, 6/26/12, at 78, 88, 202-03. Tertyshnaya even claims in her brief that "[she] did not sleep on her rights" and that "[she] could not sleep because she was certain a life insurance

policy had been purchased from the [Insurance Defendants]." Tertyshnaya's Brief at 17.

In fact, in October 1999, Tertyshnaya asked Colton to determine if she was entitled to AD&D benefits under Tertyshny's insurance policy. Deposition of Colton, 7/11/12, at 30-31. In 2004, subsequent to Colton's inquiries into whether Tertyshnaya was entitled to AD&D insurance benefits, she engaged McNally to investigate whether she had a claim for AD&D benefits. Deposition of McNally, 10/17/12, at 20. Neither Colton nor McNally have any recollection of contacting the Insurance Defendants to see if Tertyshny's policy included AD&D coverage, despite evidence indicating that both Colton and McNally had insurance documentation identifying SSLIC in conjunction with Tertyshny's policy. *Id.* at 27-29, 40-41; Deposition of Colton, 7/11/12, at 77; *see also* Insurance Defendants Motion for Summary Judgment on Counts I, II, III, and VIII, 8/19/13, Exhibit 21 (Letters From McNally to Colton, 3/9/05). It was not until December 2008 that Moy, Tertyshnaya's second husband, contacted the Insurance Defendants to determine if she had a right to any AD&D benefits. Deposition of Tertyshnaya, 6/26/12, at 204.

Thus, although Tertyshnaya made allegations of fraud against the Insurance Defendants that she claims prevented her from knowing whether Tertyshny's insurance policy existed and from filing suit within the limitations period, she has also consistently maintained that she and Tertyshny

purchased an insurance policy that included AD&D coverage. In an effort to determine what her rights were under Tertyshny's alleged PTD and AD&D policy, Tertyshnaya had three attorneys and her second husband investigate the alleged PTD and AD&D policy. Despite her consistent belief that she was entitled to AD&D benefits, however, Tertyshnaya never submitted a claim for AD&D benefits following Tertyshny's death. *Id.* at 224. In fact, no one working on her behalf contacted the Insurance Defendants until December 2008.

Tertyshnaya also finds it significant that she did not receive a copy of Tertyshny's insurance policy until after she initiated the instant litigation. *See* Tertyshnaya's Brief at 5, 10, 14, 17, 28. As a result, Tertyshnaya contends that prior to filing this lawsuit, she did not have the basis for a claim. *See id.* at 13-14. However, the fact that Tertyshnaya did not have a copy of Tertyshny's insurance policy until after filing suit only underscores her lack of reasonable diligence in this case. At the time she filed suit in May 2010, Tertyshnaya possessed the same information about Tertyshny's alleged insurance policy providing AD&D coverage that she did when Tertyshny died in 1999. Moreover, Tertyshnaya had as much evidence of the purported fraud on the part of the Insurance Defendants in 1999 as she did in 2010. Given her persistent belief that she was entitled to AD&D benefits stemming from Tertyshny's death, none of the Insurance Defendants' purported acts of fraud prevented her from bringing this lawsuit.

Filing suit within the statute of limitations would have begun the discovery process – the process upon which she ultimately relied to gain the information she currently possesses.

Accordingly, the trial court did not err in concluding that the statute of limitations had run on all of Tertyshnaya's claims and that the doctrine of fraudulent concealment did not apply in this case to toll the statute of limitations. Tertyshnaya did not exercise reasonable diligence by waiting to file suit until May 2010 because she had no more evidence then of her alleged right to AD&D benefits or the Insurance Defendants' purported fraud than she did following Tertyshny's death. *See Hopkins*, 65 A.3d at 460. Additionally, none of the Insurance Defendants' alleged acts of fraud caused Tertyshnaya to relax her vigilance or deviate from her right of inquiry into the facts. *See Fine*, 870 A.2d at 860. Therefore, the trial court was correct in finding Tertyshnaya's delay in filing suit inexcusable.

Tertyshnaya also argues that the discovery rule applied in this case to toll the statute of limitations. Tertyshnaya's Brief at 24-36. We find that Tertyshnaya has waived this claim based upon her failure to raise it before the court below. "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." *Majorsky v. Douglas*, 58 A.3d 1250, 1268 (Pa. Super. 2012), *appeal denied*, 70 A.3d 811 (Pa. 2013); *see also* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Here, Tertyshnaya did not

raise the discovery rule as an exception to the statute of limitations in her memorandum in opposition to the Insurance Defendants' motion for summary judgment. **See** Plaintiff's Memorandum in Opposition to the Insurance Defendants' Motion for Sanctions for Spoliation of Evidence and Four Motions for Summary Judgment, 10/25/13, at 27-29. The fact that the trial court did not address the discovery rule in its opinion further supports the notion that Tertyshnaya failed to raise this issue. **See** Trial Court Opinion, 12/16/13, at 5-10. Tertyshnaya cannot now raise this issue for the first time on appeal. **See Majorsky**, 58 A.3d at 1268; Pa.R.A.P. 302(a). Accordingly, Tertyshnaya has waived this claim on appeal. However, given our analysis and disposition of the claim she raised, the result would be the same.

For her next issue on appeal, Tertyshnaya argues that the trial court erred in granting the Insurance Defendants' motion for summary judgment because it relied on documents attached to their motion that they misrepresented Tertyshnaya to have possessed prior to her filing suit. Tertyshnaya's Brief at 36-38. Tertyshnaya claims the Insurance Defendants wrongly stated that these records were "produced by Plaintiff." **Id.** Tertyshnaya also contends that the Insurance Defendants did not authenticate certain other records relied on by the trial court. **Id.** Tertyshnaya further complains that the trial court ignored her objections to the Insurance Defendants' records by denying her motion *in limine* in

regards to the Insurance Defendants' spoliation of relevant records after she filed suit. *Id.* at 38-39. Tertyshnaya asserts that the trial court improperly made factual determinations on an incomplete record. *Id.*

We conclude that the trial court did not abuse its discretion in its consideration of the records attached to the Insurance Defendants' motion for summary judgment. There is no support for Tertyshnaya's allegations that the Insurance Defendants misrepresented any records. The only representation that the Insurance Defendants make in their motion for summary judgment is that these records were "produced by Plaintiff in discovery," not that she had them prior to filing suit. *See, e.g.*, Insurance Defendants' Motion for Summary Judgment on All Claims Because All Claims are Barred by the Statute of Limitations, 8/19/13, ¶¶ 6-7. Although the affidavit authenticating several of the Insurance Defendants' exhibits attached to their motion for summary judgment did mistakenly state that Tertyshnaya received them "prior to and during this litigation," the Insurance Defendants' notified the trial court of this error and corrected it. *See* Praecipe to Attach to Motion for Summary Judgment – Exhibit 1, 11/21/13, ¶ 3; Insurance Defendants' Reply Supporting Praecipes to Attach and for Oral Argument, 12/6/13, at 4.

There is likewise no support for Tertyshnaya's claims that the trial court relied on records that the Insurance Defendants did not properly authenticate. First, the Insurance Defendants properly attached each of the

records that they relied upon to their motion for summary judgment. **See Kroptavich v. Pennsylvania Power & Light Co.**, 795 A.2d 1048, 1063 (Pa. Super. 2002) (finding depositions and various other business record exhibits that the moving party attached to the motion for summary judgment were properly made part of the certified record). Second, the Insurance Defendants filed an affidavit, signed by Brendon Bruner of HCC, certifying the authenticity of several of the records relied upon by the Insurance Defendants in their motion for summary judgment. **See** Praecipe to Attach to Motion for Summary Judgment – Exhibit 1, 11/21/13, ¶¶ 4-5.

Finally, even if the trial court did improperly consider certain records in this case, it would have no effect on the outcome of the case. Here, there is no dispute that Tertyshnaya has maintained the belief since 1999 that she and Tertyshny bought an insurance policy with PTD and AD&D coverage. Despite this belief, and the fact that Tertyshnaya or her attorneys possessed documentation identifying the Insurance Defendants concerning this alleged policy, Tertyshnaya never filed a claim for death benefits with the Insurance Defendants and did not file suit against them for nearly 11 years. These facts are either admitted to, by Tertyshnaya or her former attorneys, or supported by the record, and are fatal to her claims.

Order affirmed.

J-A25014-14

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/19/2014